# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE KIMIKO AYERS,<br><br>**Plaintiff**<br>v.<br><br>FELLOWSHIP OF CHRISTIAN ATHLETES; RON NELSON; KINGS CANYON UNIFIED SCHOOL DISTRICT; JUAN GARZA, in his official capacity as superintendent of the Kings Canyon Unified School District; ROBERTO GUTIERREZ, in his official capacity as Principal of Reedley High School; TIMOTHY WARKENTIN, in his official capacity as teacher and school sponsor of the Fellowship of Christian Athletes; REEDLEY MENNONITE BRETHREN CHURCH; and JOEL KERSEY,<br><br>**Defendants** | CASE NO. 1:18-CV-1026 AWI-SAB<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS UNDER RULE 12(B)(6)**<br><br>(ECF Nos. 31, 33, 34, 35) |

Plaintiff Anne Kimiko Ayers asserts religious-discrimination claims against her former high school and a non-curriculum school club, based on the club's denial of a leadership role to Ayers because of her Mormon faith. *See* ECF No. 28. She asserts First and Fourteenth Amendment claims under 42 U.S.C. § 1983, and associated claims under § 1985(3), § 1986, and Cal. Civ. Code §§ 51 and 52. *See Id*. She seeks damages, fees, and costs. *Id*. at p. 26. Defendants move for dismissal with prejudice under Rule 12(b)(6),[1] arguing 11th Amendment immunity, absence of state action, and failure to state a claim. *See* ECF Nos. 31, 33, 34, 35. For the reasons that follow, Defendants' motions will be granted in part and denied in part.

---

[1] Citation to the Rule(s) are to the Federal Rules of Civil Procedure (2019) unless otherwise noted.

## Background[2]

Anne Ayers is a resident of Reedley, California, a 2018 graduate of Reedley High School, and a member of the Church of Jesus Christ of Latter-day Saints (the "Church", "LDS", or the "Mormon" faith). ECF No. 28 at ¶ 1. While in high school, Ayers was a member of the Reedley High chapter of a nationwide organization called the Fellowship of Christian Athletes ("FCA"). *Id*. at ¶ 13, 32. The noncurricular club met on school grounds after hours, was sponsored by Defendant Timothy Warkentin (a Reedley High teacher), and frequently took direction from Defendant Ron Nelson (the "Multi Area Director of the Central Valley FCA") and Defendant Joel Kersey, minister at the Reedley Mennonite Brethren Church. *Id*. at ¶¶ 3, 7, 9.

Ayers was not only an exemplary high-school student, but also an active member of the FCA, believing it fit with her "goal to serve others" and her "desire to pursue individual growth and demonstrate her leadership qualities." *Id*. at ¶ 14. In February of her junior year, Warkentin, Nelson, and Kersey invited all FCA members to apply for leadership positions. *Id*. at ¶ 16. Ayers was "encouraged by her peers, who were also members of the [FCA], to apply to be the Treasurer [of the club,]" and so she "filed the proper application as directed by Nelson to be placed . . . as Treasurer." *Id*. at ¶ 15, 16. Ayers noticed the form asked all applicants what church they belonged to, and Ayers answered that she was a member of the Church of Jesus Christ of Latter-day Saints. *Id*.

After submitting her application, Ayers received an email from Nelson, copied to Kersey, stating she was being denied a leadership role because of her Mormon faith. *Id*. at ¶ 18. Nelson stated that "when dealing in matters of leadership he needed 'crystal clear theology when talking with coaches and athletes,'" and that he was "not sure if you [Ayers] know the theological differences between the Christian Church [and] LDS." *Id*. Ayers and other FCA members complained to Reedley High's principal and school district officials, with no resolution. *Id*. at ¶¶ 20-24. Ayers was ultimately denied a leadership position in the FCA because of her active membership in the Church of Jesus Christ of Latter-day Saints. *Id*. at ¶ 13.

---

[2] These facts derive from the 1AC and are construed in the light most favorable to Plaintiff, the non-moving party. *Faulkner v. ADT Sec. Servs*., 706 F.3d 1017, 1019 (9th Cir. 2013).

## *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's failure to state a claim upon which relief can be granted. A Rule 12(b)(6) dismissal may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015).

In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party. *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *Mollett*, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." *Id*. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The Ninth Circuit has thus distilled the following principles courts are to apply when reviewing Rule 12(b)(6) motions:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.
> Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend, even if no request to amend the pleading was made," unless amendment would be futile or unless the plaintiff has failed to cure deficiencies despite repeated opportunities. *Garmon v. County of L.A.*, 828 F.3d 837, 842 (9th Cir. 2016).

/ / /

*Analysis*

42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" against a person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 639 (1980); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-691 (1978) (local governmental bodies can be considered "persons" subject to suit under § 1983). "Section 1983 is not itself a source of substantive rights; rather it provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–394 (1989). Thus, to state a claim for relief under § 1983, the Plaintiffs must plead two essential elements: (1) that the Defendant acted under color of state law; and (2) that the Defendant caused them to be deprived of a right secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1985 creates a civil action for damages caused by two or more persons who "conspire . . . for the purpose of depriving" the injured person of "the equal protection of the laws" and take or cause to be taken "any act in furtherance of the object of such conspiracy." 42 U.S.C. § 1985(3). Thus, to state a violation of § 1985(3), a plaintiff must "allege and prove four elements":

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1245 (9th Cir. 2019). Correspondingly, § 1986 creates a civil action for neglecting to prevent a wrongful act under § 1985. 42 U.S.C. § 1986. Thus, claims under § 1986 require a cognizable § 1985 claim, and § 1985 claims require a cognizable claim under § 1983. *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 930 (9th Cir. 2004).

Finally, the California Unruh Act states, relevantly, that "[a]ll persons within the jurisdiction of this state are free and equal, [regardless of their] religion . . ., [and] are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51.

*Plaintiff's Claims in the 1AC, Defendants' Motions*

Plaintiff's 1AC states ten distinct claims under 42 U.S.C. §§ 1983, 1985, 1986, and Cal. Civ. Code §§ 51 and 52, each alleged against various Defendants. They can be summarized as:

- The first six claims are brought under § 1983, for violations of the Equal Access Act, First Amendment Free Speech, Free Association, Free Exercise, and "Establishment Clause," and Fourteenth Amendment Equal Protection— these are asserted against all Defendants;
- The seventh claim is a § 1983 *Monell* claim for unlawful custom, practice, policy and failure to train, asserted against the Kings Canyon Unified School District;
- Claim eight is for "conspiracy to interfere with civil rights" under § 1985(3), asserted against the FCA and its area director Nelson, and the Reedley Mennonite Church and its minister Kersey;
- Claim nine is for "failure to intervene" under § 1986, asserted against all Defendants;
- Claim ten is for violations of the Unruh Act, Cal. Civ. Code §§ 51 and 52, asserted against the Fellowship of Christian Athletes.

Defendants assert a variety of distinct legal arguments for why the 1AC should be dismissed. For efficiency, the Court will only discuss those arguments needed to resolve the issues.

### I. "Official Capacity" claims against Garza, Gutierrez, and Warkentin are redundant

Official capacity suits are generally another way of pleading an action against an entity of which the officer is an agent. *Monell*, 436 U.S. at 690, n. 55. "For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." *Fontana v. Alpine Cty.*, 750 F. Supp. 2d 1148, 1154 (E.D. Cal. 2010).

Plaintiff's claims against Defendants Juan Garza, Roberto Gutierrez, and Timothy Warkentin are expressed as "official capacity" claims. However, Plaintiff also names the Kings Canyon Unified School District—employer to Garza, Gutierrez and Warkentin. Plaintiff knows how to assert claims against officers in their individual capacity (as any competent attorney should, per Cal. Rule of Court 1.1), since Plaintiff has so pleaded against Defendants Nelson and Kersey. Thus, all claims against Defendants Garza, Gutierrez, and Warkentin (claims 1, 2, 3, 4, 5, 6 and 9) will be dismissed as redundant.[3] *Fontana.*, 750 F. Supp. 2d at 1154.

---

[3] Plaintiff states in her opposition memo that if required, she will allege "individual capacity" claims against these Defendants. This is Plaintiff's prerogative, but she is reminded that she should conduct a reasonable inquiry into the facts and law, as required by Rule 11, before asserting any claims. *See, e.g.*, *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) ("An official is liable under § 1983 only if culpable action, or inaction, is directly attributed to them.").

5

**II. All § 1983 claims against Kings Canyon USD, as well as the § 1986 claim, are barred by the Eleventh Amendment**

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Thus, the Eleventh Amendment prohibits actions for damages against state agencies when Congress has failed to express a contrary intent. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 250 (9th Cir. 1992).

In *Belanger*, a school-district employee sued her employer (the school district), alleging claims under § 1983. *Id*. at 249. The district court granted summary judgment for the district on Eleventh Amendment grounds after discovering that any money judgment against the district would be satisfied out of state funds. *Id.* at 250. The plaintiff appealed the district court's interpretation of the Eleventh Amendment, but the Ninth Circuit affirmed. *Id*. Applying factors meant to illustrate the reach of the Eleventh Amendment (*see Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir.1988)), the court determined that California school districts are "state agencies" and therefore immune from suit. *Id*. The court found that California school districts' budgets are controlled and funded by the state government (so that any judgments would be satisfied with state funds), and California law treats public schooling as a statewide or central governmental function. *Id*. at 251-254; *see also Eason v. Clark Cty. Sch. Dist.*, 303 F.3d 1137, 1142 (9th Cir. 2002) (distinguishing *Belanger* where Nevada did not share "the unique structure of the California school system."); *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1051 (9th Cir. 2003) (same).

Here, Plaintiff's first seven claims against the Kings County Unified School District are brought under § 1983, and her ninth claim against the District is brought under § 1986. Critically, Plaintiff only seeks money damages against the District. Despite Plaintiff's creative arguments in opposition to Eleventh Amendment immunity, *Belanger* is still good law to which this Court is bound. Thus, all claims for money damages against Defendant Kings County Unified School District (claims 1, 2, 3, 4, 5, 6, 7, and 9) will be dismissed. *Belanger*, 963 F.2d at 254-55.

///

**III. § 1983 claims against the FCA/Nelson and the Mennonite Church/Kersey fail for lack of viable "color of state law" allegations.**

To state a claim under § 1983, a plaintiff "must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 48.

To determine whether actions that allegedly caused the deprivation of a right are fairly attributable to the state—even though they were committed by private actors—a court is to inquire whether, among other things, the depriving party is "a person who may fairly be said to be a state actor." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (stating that in order for private conduct to constitute governmental action, "something more" must be present). Courts have used four different factors or tests to identify what constitutes "something more": (1) the public-function test, (2) the joint-action test (3) the governmental-compulsion or -coercion test, and (4) the test for a governmental nexus. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835–36 (9th Cir. 1999). Courts have adopted these test because "'§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong.'" *Id.* at 835 (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999)). Given the fluidity of constitutional claims, courts have often stated that "[w]hile these factors are helpful in determining the significance of state involvement, there is no specific formula for defining state action." *Id.* at 836.

Here, the core of Plaintiff's factual allegations are that Nelson (the FCA director) denied her a leadership position in the FCA due to her Mormon faith, that Kersey (pastor at the Mennonite Church) was involved in this decision, and that Warkentin (as the club's school sponsor) and Gutierrez (as Reedley High principal) acquiesced. *See* ECF No. 28 at ¶¶ 16-21. Setting aside Plaintiff's other conclusory statements, these plausible facts do not rise to the level of "something more," so as to deem the FCA, Nelson, Kersey and the Mennonite Church as state actors under any of the *Sutton* tests. 192 F.3d at 835–36.

Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations. *Florer*, 639 F.3d at 922. The public function test is satisfied only on a showing that "the function at issue is both traditionally and exclusively governmental." *Id*. at 924. Here, the school district has no responsibility to appoint leadership of a student club that met after school hours, and Plaintiff points to no cases that have held otherwise. *Cf. Id*. at 925-26 (finding no state action under public function test where rabbi declined to recognize prisoner-plaintiff as Jewish and declined to provide him Torah on that basis).

Similarly, Plaintiff's claim fails under the other *Sutton* tests. Under the joint action test, the allegations must state that private persons, "jointly engaged with state officials in the prohibited action, are acting 'under color' of law. *Florer*, 639 F.3d at 926 (quoting *Lugar*, 457 U.S. at 941). This test examines whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity[,] when the state knowingly accepts the benefits derived from unconstitutional behavior." *Id*. Courts have also found state action under where the state has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State," (the state coercion/compulsion test), or where a "sufficiently close nexus" exists between the state and private entity (government nexus test). *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997); *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 956 (9th Cir. 2008). Here, the 1AC alleges that Nelson and Kersey were the ones who denied her a leadership position in the FCA—thus failing to connect the club's decision to any by school officials. *See* ECF No. 28 at ¶¶ 16-22. Plaintiff states that she and a friend complained to Reedley High principal Gutierrez, who they believe has a duty under the EAA to dictate the FCA's inner workings. *Id*. at ¶¶ 22-24. However, she only intimates that Gutierrez failed to respond to these inquiries, and in fact seemed "surprised" when he learned of the FCA's inner workings. *Id*. at ¶ 22. Again setting aside Plaintiff's conclusory assertion (*e.g.* that Kersey was "speaking on behalf of RHS/District[,]" or that Kersey and Nelson were "empowered" by the school district), Plaintiff has

failed to plead plausible facts satisfying the joint-action, compulsion or nexus tests. *See Florer*, 639 F.3d at 927 ("[E]ven if [the rabbi] had provided advice to the [state] about [plaintiff's] Jewish status, such advice was an ecclesiastical answer to a question of religious doctrine, not an administrative determination."); *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 818 (9th Cir. 2010) (concluding that charter school was not compelled by significant regulations, where no "substantive standards or procedural guidelines that could have compelled or influenced [the private actor's] actions."); *Villegas*, 541 F.3d at 956 (failure to show nexus where plaintiffs were expelled from public festival by a private nonprofit organizer, but where city had no control over internal operation of the festival).

Taking Plaintiff's allegations in a light most favorable to her, the 1AC fails to state plausible facts indicating Defendants FCA, Nelson, Kersey or the Reedley Mennonite Church "can fairly be said to be state actor[s]." *Florer*, 639 F.3d at 922. Thus, Plaintiff's § 1983 claims against these Defendants (claims 1, 2, 3, 4, 5, and 6) must be dismissed.

### IV. § 1985(3) and 1986 claims against the FCA/Nelson and the Mennonite Church/Kersey fail for lack of viable § 1983 claims

Section 1985 creates a civil action for damages caused by two or more persons who "conspire . . . for the purpose of depriving" the injured person of "the equal protection of the laws" and take or cause to be taken "any act in furtherance of the object of such conspiracy." 42 U.S.C. § 1985(3). § 1986 creates a civil action for neglecting to prevent a wrongful act under § 1985. Thus, § 1985(3) is predicated on a viable § 1983 claim, and § 1986 claims require a viable § 1985 claim. *McCalden*, 955 F.2d at 1223; *Olsen*, 363 F.3d at 930.

Plaintiff did allege § 1983 claims in her 1AC, but the Court has dismissed all of these claims for a variety of reasons, as stated above. Therefore, Plaintiff's § 1985(3) claim against the FCA, Nelson, Kersey, and the Reedley Mennonite Church (claim 8) must also fail. *Olsen*, 363 F.3d at 930. Since her § 1985(3) claim fails, so must her § 1986 claim against these Defendants (claim 9). *McCalden*, 955 F.2d at 1223.

/ / /

/ / /

**V. The Court will decline to exercise supplemental jurisdiction of Plaintiff's claim under the Unruh Act, given the dismissal of all federal claims.**

Where no basis for federal jurisdiction exists over purely state law claims with non-diverse parties, the Court may choose exercise its discretion to decline supplemental jurisdiction under 28 U.S.C. § 1367; *Smith v. Lenches*, 263 F.3d 972, 977 (9th Cir. 2001) ("District courts may decline to exercise jurisdiction over supplemental state law claims in the interest of judicial economy, convenience, fairness and comity."); *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 955 (E.D. Cal. 2011) ("The court may decline to exercise supplemental jurisdiction over state claims when the federal claims are dismissed before trial.") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Having disposed of Plaintiff's claims 1-9 under §§ 1983, 1985(3) and 1986 against all Defendants, she is left with one claim against Defendant FCA for violations of Cal. Civ. Code §§ 51 and 52. As this remaining claim is a state law claim, the federal claims have been dismissed, and the parties all appear to be California citizens, the Court will decline supplemental jurisdiction over Plaintiff's tenth cause of action in the interests of judicial economy. 28 U.S.C. § 1367; *Smith*, 263 F.3d at 977; *Rodriguez*, 819 F. Supp. 2d at 955.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' Motions to Dismiss (ECF Nos. 31, 33, 34, and 35) are GRANTED IN PART and DENIED IN PART, pursuant to the Court's findings above, and as follows:
    a. Plaintiff's "official capacity" claims for money damages under 42 U.S.C. §§ 1983, 1985(3), and 1986 against Defendants Juan Garza, Roberto Gutierrez, and Timothy Warkentin (claims 1, 2, 3, 4, 5, 6, 7, and 9), are DISMISSED WITH PREJUDICE as redundant of the claims against Defendant Kings County Unified School District;
    b. Plaintiff's claims for money damages under 42 U.S.C. §§ 1983, 1985(3), and 1986 against Defendant Kings Canyon Unified School District (claims 1, 2, 3, 4, 5, 6, 7, and 9), are DISMISSED WITH PREJUDICE as barred under the Eleventh Amendment;

c. Plaintiff's claims under § 1983 against Defendants Nelson, the Fellowship of Christian Athletes, Kersey, and the Reedley Mennonite Brethren Church (claims 1, 2, 3, 4, 5, 6) are DISMISSED WITHOUT PREJUDICE for lack of state action;

d. Plaintiff's claims under § 1985(3) and § 1986 against Defendants Fellowship of Christian Athletes, Nelson, Kersey and the Reedley Mennonite Brethren Church are DISMISSED WITHOUT PREJUDICE for lack of a viable § 1983 claim;

e. The Court declines to exercise supplemental jurisdiction over Plaintiff's claim under the Unruh Act, Cal. Civ. Code §§ 51 and 52; and

2. The parties' arguments as to the late filings are denied as moot, per Local Rule 230(c), given that the Court vacated the hearing on Defendants' motions and took the matter under submission; and

3. Plaintiff is granted leave to file a Second Amended Complaint within 21 days of this order consistent with the Court's analysis above, and if no timely amended complaint is filed, leave to amend will be withdrawn and this case will be closed without further comment.

IT IS SO ORDERED.

Dated:  April 3, 2019    _____

SENIOR DISTRICT JUDGE